## EX PARTE CHABERT, PETITIONER AND APPELLANT.

### APPEAL from the District Court of San Juan in Habeas Corpus Proceedings.

#### No. 2729.—Decided June 9, 1922.

HABEAS CORPUS—REMAND—FINDINGS OF SUPREME COURT.—When on an issue of fact this court remands a case for further proceedings, in the absence of further proof the findings of fact of this court are conclusive on the parties.

ID.—PATRIA POTESTAS.—Whether or not the ability of the father may be inquired into on habeas corpus, where the proof fails to show inability, but tends to show the contrary, there can be no doubt of the right of the father to the custody of his child.

The facts are stated in the opinion.

*Mr. M. Acosta Velarde* for the appellant.

*Mr. E. Acuña Aybar* for the respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This is the second hearing of this case. The court, at the former hearing, decided unanimously that the paternity of the child Nancy had been proved and by a majority vote sent the case back for further proceedings not inconsistent with the opinion. *Chabert v. Sánchez,* 29 P. R. R. 225. The idea of the court evidently was, as the opinion shows, to permit the parties to test the question of what the well-being of the child required, but not to raise any question of its paternity. The case went back. The respondent did not amend his pleadings. The petitioner, perhaps necessarily, made no point about this and raised no further question as to the right of the court to determine the custody of the child as its own well-being might require. Thus the parties went into court with the law of the case established for them and the issue then presented was what was the best interest of the child. Let us, then, examine the case as developed.

Originally the father of Nancy turned the custody over to another and did nothing to recover it for several years. It was the case of a young couple ashamed of a birth occurring shortly after marriage who tried to conceal the fact from the world. But they have been punished, suffered and repented.

They have done more. They have made frank confession to the world and the mother of the child came into court and took the stand, thus making her position and natural claim felt. The child is seven years old and this proceeding was begun two or three years ago. Up to the time of the trial and for several years before, the father and his wife, of excellent social connections, had been leading exemplary lives. The father is completely able to support the child and the testimony shows that he is a normal individual with every presumption in his favor, except his original act in placing the child away from its natural home. This is a weakness that will sometimes occur when a child is born out of wedlock or so soon after marriage. The mother testified that she had feared the attitude of her own mother and of her step-father, but the record seems to reveal that it was rather the act of the young father to protect his wife than the latter's own act. The mother was sick and ailing in the younger years of this child. She went to the hospital for an operation, thought she might die and yearned to see her first child. In the meantime, also, this young couple had raised another child and proved their ability to take care of children.

When the possession of a young child is concerned passions rage fiercely and men and women will do and try things against which ordinarily their best natures would revolt. In no other way can we explain the actions of the respondent in this case. He and his wife have a keen devotion to Nancy and would probably sacrifice their lives for her. They have given her years of attention and would take good care of her according to their lights. But the respondent has not shown a very generous disposition toward the petitioner and his wife. The record convinces us that the respondent believed, or had good reason to believe, that Augusto de Chabert was the father of Nancy. Indeed, the respondent tolerated the visits of the young couple until a short time before this suit was begun. After this court had unanimously

found that the petitioner was the father of the child and the case was sent back for proceedings not inconsistent with the opinion, there was little reason to doubt the paternity, if in point of fact the respondent had ever doubted it. The child produced at the trial gave evidences of being influenced. Asked in regard to her relations with her little brother, whom she apparently had seen before, she denied that fact and then suddenly volunteered the information that she desired to remain with her foster parents.

We are all agreed that the presumption natural to society is that the well-being of a child is best subserved by placing it or leaving it with its natural parents. The writer has been of the opinion that the well-being of the child was not duly raised. Two of the members of the court are of the opinion that in an *habeas corpus* proceeding the well-being of a child cannot be inquired into and the writer has some doubts, but we are all of the opinion that no good reason now exists which would militate against the issuance of the writ. Assuming that the conduct of the father might have played a role in depriving him of the *patria potestas,* that reason does not exist today. Assuming that the custody of the child may be inquired into under a writ of *habeas corpus,* there is reason now to restore the custody of Nancy to her parents. In this last connection, we may add, it is better, as she grows older, that she should not have to wonder why she is differently placed from normal children in society. As against these considerations the greater financial ability of a stranger and the alleged preference of the child should not be allowed to prevail.

The judgment must be reversed and the child turned over to the petitioner.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.